E. T. Allen, Robert Allen, David Allen, Richard Allen and Terry Allen, Partners d/b/a E. T. Allen & Sons, Plaintiffs-Appellants, v. Richard Treat, Highway Commissioner of Chatham Township, a/k/a Chatham Township Road District, Sangamon County, Illinois, Defendant-Appellee.

Gen. No. 10,708.

Fourth District.

June 30, 1966.

Rehearing denied July 19, 1966.

W. P. Roberts, of Springfield, for appellants.

Alfred H. Greening, of Springfield, for appellee.

TRAPP, P. J.

This is an appeal from a judgment of the circuit court dismissing the complaint of E. T. Allen, Robert Allen, David Allen and Terry Allen, partners, doing business as E. T. Allen and Sons, against Richard Treat, Highway Commissioner of Chatham Township Road District, Sangamon County, Illinois. The complaint consisted of three counts, on contracts for delivering and spreading road oil, for individual sales of road oil, and on quantum

meruit, respectively. All counts covered the same subject matter, that is to say, the sale, delivery and spreading of road oil in the total amount of $37,943.36, on which $15,694.18 had been paid, and $23,354.88 remained unpaid.

It is not disputed that an election had been held in the district authorizing a special road oil tax, which had been levied and collected for the maintenance work in issue.

Count I set forth alleged written contracts for the years 1960, 1961 and 1962 between plaintiff and defendant's predecessor. The alleged contracts were identical except for date. The 1962 contract is as follows:

## "ROAD OIL AGREEMENT"

"This agreement made this 8th day of January, 1962, between E. T. Allen and Sons, Road Oil and Asphalt and William Sommers Commissioner of Highways of Chatham Township, in Sangamon County, Illinois, Witnesseth:

"E. T. Allen and Sons, Road Oil and Asphalt, agree to furnish, heat and apply, in good and workmanlike manner 100,000 gallons, more or less, of road oil on roads of Chatham Township designated by said Commissioner.

"Said Commissioner as such and in behalf of said Township agrees to pay E. T. Allen and Sons, Road Oil Asphalt, for said oil and work at the rate of Fourteen ($0.14) cents per gallon.

"The foregoing provisions and undertakings of each party are for and in consideration of those of the other.

"In Witness thereof, said parties have hereunto set their hands this 8th day of January 1962 at Chatham, Illinois.

"E. T. Allen and Sons,
Road Oil and Asphalt

"By /s/ E. T. Allen

"Commissioner of Highways
Of /s/ Wm. Sommers, Township

"The foregoing Contract approved:

"By————————————————
County Superintendent of Highways"

The oil was delivered and spread in nineteen separate batches between August 17 and October 12, 1960, sixteen separate batches between September 11 and October 9, 1961, and twenty separate batches between June 14 and October 9, 1962. The value of the batches ranged from $341.18 to $855, except for one batch delivered September 22, 1962, of the value of $1,106.

Defendant contends that since the alleged contracts did not have the written approval of the County Superintendent of Highways, the contracts are void. At times material hereto the statute, Chap 121 (Ill Rev Stats, 1963) provided in part, as follows:

"6–201. Highway Commissioner.) § 6–201. The highway commissioner of each road district shall perform the functions stated in Sections 6–201.1 to 6–201.16, inclusive:

. . . . . .

"6–201.7. Construction and maintenance of roads in district—Contracts.) § 6–201.7. Construct, maintain and repair and be responsible for the construction, maintenance and repair of roads within the district, let contracts, employ labor and purchase material and machinery therefor, subject to the limitations provided in this Code. No contract

shall be let for the construction or repair of any road or part thereof in excess of the amount of $1,000, nor shall any material, machinery or other appliance to be used in road construction or maintenance of roads in excess of such amount be purchased, nor shall several contracts each for an amount of $1,000 or less be let for the construction or repair of any road or part thereof when such construction or repair is in reality part of one project costing more than $1,000, nor shall any material, machinery or other appliance to be used therein be purchased under several contracts each for an amount of $1,000 or less, if such purchases are essentially one transaction amounting to more than $1,000, without the written approval of the county superintendent of highways in the case of road districts other than consolidated township road districts or without the written approval of the highway board of auditors in the case of consolidated township road districts. As amended by act approved July 10, 1959.

. . . . . .

"6–407. Contracts for construction and repair of roads and bridges within district.) § 6–407. The highway commissioner in each road district may contract for the construction and repairing of roads and bridges lying wholly within the limits of his district. When any such contract or other expenditure shall be for a sum in excess of $1,000, the commissioner shall not let or make any payment on the same without the approval of the county superintendent of highways in the case of road districts other than consolidated township road districts or without the written approval of the highway board of auditors in the case of consolidated township road districts. The county superintendent

470

shall keep a record of all payments approved by him. . . ."

We have reviewed and considered the following cases cited by defendant:

In DeKam v. City of Streator, 316 Ill 123, 146 NE 550, a contract for engineering services for a sewer system was entered when there was no prior appropriation. The statute prohibited a city from making a contract or expenditure without a prior appropriation, required the appropriation to be in the first quarter of the fiscal year, and forbade other appropriations unless sanctioned by a vote of the people. The Criminal Code also made it an offense to contract for a greater sum than may have been appropriated. The suit was to enjoin the payment of any further sums under the contract. The court held that the statute put it beyond the power of the municipality to make the contract, that the contract was void, that it could not be ratified and that the city could not be estopped to deny payment for the benefits received. The court said, p 129:

> "A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. . . ."

In Izzo v. City of Loves Park, 20 Ill App2d 117, 155 NE2d 312, one count of a complaint based upon a quantum meruit was dismissed because of the failure to allege a prior appropriation. At this time the statute itself declared contracts made or expenditures incurred in violation of the requirement of prior appropriation were null and void.

In Bituminous Cas. Corp. v. City of Harrisburg, 315 Ill App 243, 42 NE2d 971, the court held that contracts for insurance premiums not approved by the city council

created no obligation upon the municipality, and stated, p 251:

". . . If there is a statute prescribing the method by which an officer or agent can bind a municipal corporation by contract, such method must be followed, since there can be no implied contract or liability on the part of such municipal corporation. . . ."

Folkers v. Butzer, 294 Ill App 1, 13 NE2d 624, concerned an action to enjoin payment of tax anticipation warrants where the special tax levy had expired before these warrants were issued, so that the warrants in litigation would have to be paid from the general funds. The highway commissioner had let a contract for improvement of 14 miles of road in the township by grading, draining and graveling the same for the sum of $39,945.07. The statute required plans and specifications, for filing the same with certain officers, and for advertisement for three weeks for sealed bids. It was undisputed that no advertisement for bids was made, no notice posted and no plans or specifications were filed. The court held that one dealing with a municipal corporation was bound to take notice of the powers of the officers to make a contract. The court said, p 7:

"Where by statute a public officer can only let contracts to the lowest bidder after advertisement, a contract made in violation of such requirements is illegal. . . ."

Brownell Improvement Co. v. Highway Com'r of Town of Sumner, 280 Ill App 43, involved crushed stone for a specific hard road project where the statutory limitation on purchases without approval of the county superintendent, and without taking bids, was $200, and thirty-five warrants were issued for $199.

In all of the foregoing cases there was a definite public policy against doing the thing done. Not one dollar of money could lawfully be contracted for or expended upon the project involved without complying with the statute involved, and the court in each case found a want of power to act in the governing body involved.

In the present case, the highway commissioner unquestionably had the power conferred by statute to purchase road oil or other material without the consent of the county superintendent of highways wherever the purchases did not individually exceed $1,000, and the individual purchases were not "in reality part of one project costing more than $1,000." In Euziere v. Highway Com'r of Town of Rockville, 346 Ill 131, p 135, 178 NE 397, where one hundred thirty-one items ranging from thirty cents to $40.85 for coal, stone, tile and cement, delivered from February 1, 1924, to June 30, 1927, the court said:

> "The appellant had the power prima facie to purchase materials for the purposes stated; after the delivery of the materials the obligation to pay for them was not dependent upon some act to be done or forborne by the appellee and any fact or circumstance limiting or restricting the appellant's power to make the purchases should have been pleaded in defense of the suit."

In Standard Oil Co. v. Town of Patterson, 300 Ill App 385, 21 NE2d 12, there was a suit upon certain anticipation warrants and upon the common counts. Over 200 sales tickets for gasoline and tires ranging from $1.35 to $70.22, delivered between March 10, 1930, and June 10, 1934, to the highway commissioner, in total amount of $3,622.67, were the subject matter of the claim. The warrants issued to pay for the items were void. The court held the highway commissioner had prima facie

power to purchase the material and since no single purchase exceeded $200, the consent of the county highway superintendent was not required. The court rejected the contention that the issuance and acceptance of the invalid warrants estopped plaintiff from suit on the account.

In County of Coles v. Goehring, 209 Ill 142, 70 NE 610, a contract for the construction of a courthouse provided that it should be paid for in interest bearing county orders. These orders were invalid as being in violation of a statute which required that orders be issued against taxes already levied. The court held that the invalidity of the provision for the county orders did not relieve the county of its obligation to pay for the benefit received. The court, p 169, said:

> "In Hitchcock v. Galveston, 96 US 341 where a city agreed to pay for sidewalks in city bonds and the bonds were held to be invalid, it was decided that the city was liable upon its contract, and that, although it had agreed to pay in a way in which it had no power to pay, yet, having received the property, it was estopped to deny its power to contract; and it was there said by the Supreme Court of the United States: 'It is enough for them (the plaintiffs) that the city council have power to enter into a contract for the improvement of the sidewalks; that such a contract was made with them; that under it they have proceeded to furnish materials and do work, as well as to assume liabilities; that the city has received and now enjoys the benefit of what they have done and furnished; that for these things the city promised to pay, and that, after having received the benefit of the contract, the city has broken it.'
>
> "It makes no difference that the contract in the case at bar provided for payment in county orders,

and that these county orders are invalid. In Hitchcock v. Galveston, supra, it was said: 'If payments cannot be made in bonds because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law. *The contract between the parties is in force, so far as it is lawful.'*" (Emphasis ours.)

A statement concerning mere irregular exercise of an actual power in Westbrook v. Middlecoff, 99 Ill App 327 on 330, approved in County of Coles v. Goehring, 209 Ill 142 on p 165, 70 NE 610, is as follows:

"Where the statute authorizes a municipal corporation to exercise a certain power, but specifically regulates the mode in which it may be exercised, an attempt on the part of the municipal officers to override the regulations and exercise it in another manner will be restrained; but when the officers have so acted, and the municipality has received the benefits of a contract thus irregularly entered into, it is estopped from setting up the irregular exercise of the power when called upon to pay for what it has received."

In McGovern v. City of Chicago, 281 Ill 264, 118 NE 3, where a contract was let to a contractor who did not, in each case, comply with a provision in the advertisement that no bid would be accepted that did not contain an adequate and reasonable price for each item named in the schedule of quantities and the time of execution extended beyond the fiscal year of the appropriation, the court held recovery could be had for the work done under the contract. The court said, p 283:

". . . There is another class of municipal contracts which are usually classed as ultra vires which are only so in a limited or secondary sense. These are contracts which are within the general powers of the

475

corporation but which are void because the power was irregularly exercised, *or where some portion of an entire contract exceeds the corporate powers but other portions of the contract are within the corporate powers.* This class of municipal contracts is well illustrated by the case of City of East St. Louis v. East St. Louis Gas Light and Coke Co., 98 Ill 415. In that case the city of East St. Louis contracted for the lighting of its streets with the gas company, at a fixed price per light, for the term of thirty years. A suit was brought by the gas company to recover the monthly installments that were past due under the contract. The city defended on the ground that the contract was ultra vires and that no suit could be maintained thereon. This court held that the lighting of the streets was a purpose clearly within the corporate powers of the city; that the contract had no element of illegality in it and that it was only illegal in respect to the term of its duration; that the corporation having received the benefits under a contract which was merely ultra vires it was bound to pay for the benefits received, and that the rule applicable to municipal corporations in this regard was the same as in the case of a private corporation. *Many cases are to be found applying this rule, and the principle is now firmly established that the doctrine of ultra vires is not applied (except in cases where the contract is prohibited by some rule of law) where its enforcement would enable the municipality to obtain an unconscionable advantage of the other party to the contract, and that municipal corporations, as well as private corporations and natural persons, are bound by the principles of common honesty and fair dealing. . . .*" (Emphasis ours.)

■ The Illinois authorities and, indeed, the majority of courts in other jurisdictions (see 53 ALR2d 498; 42 ALR 632; 142 ALR 542; 84 ALR 936; 110 ALR 153; 154 ALR 356), hold that a municipality or other political subdivision may become obligated to pay the reasonable value of benefits accepted or appropriated by it *as to which it has the general power to contract.* The lines are not always clearly drawn by the cases. In Great Lakes Dredge & Dock Co. v. City of Chicago, 353 Ill 614, 188 NE 196, a written contract between the City of Chicago and a dredging company required specific authorization from the city council for alterations which would increase the expense of the work. Work was done in building cofferdams not in the contract, which were said to have been caused by unprecedented water levels, without obtaining the specific consent of the city council. The court said, p 627:

". . . The city, by standing by and without objecting permitting this work to be done and accepting the benefits of that work, must be held to have ratified it. Ratification may be proved by circumstances or inferred from acquiescence after notice. (American Car Co. v. Industrial Commission 335 Ill 322.) It was long ago said by this court: 'If one sees another doing work for him beneficial in its nature and by his agent overlooks the work as it progresses and does not interfere to forbid it, the work itself being necessary and useful, and appropriates the work to his own use, he might be liable on an implied promise to pay the value of the work.' (DeWolf v. City of Chicago, 26 Ill 443; Maher v. City of Chicago, 38 id. 266.) A municipality may be estopped to defend that its agents were without power to make a contract when the facts show that such municipality has accepted the benefits of that con-

tract, *where the contract is such as the municipality was empowered to make.* (McGovern v. City of Chicago, 281 Ill 264; People v. Spring Lake Drainage and Levee District, 253 id. 479.) We are convinced that either under the common counts, which have been fully proved and not disputed, or under the contract made by the commissioner of public works with plaintiff in error, the latter is entitled to judgment for the value of that work in the amount claimed." (Emphasis ours.)

The cases of James Anderson Co., Inc. v. City of Highland Park, 276 Ill App 327 on 338; Woods v. Village of La Grange Park, 287 Ill App 201 on 208, 4 NE2d 764 and Welsbach Traffic Signal Co. v. City of Chicago, 328 Ill App 467, 478–480, 66 NE2d 471, state the same principle.

In the present case the documents which purport to be contracts are, upon examination, offers to supply a certain quantity of oil at a certain price. The offers are indefinite as to period and there is no obligation to take a particular quantity, and it appears that the material and labor are to be furnished upon an as needed and designated basis.

The power to purchase the material, oil, and to order it spread, without consultation with anyone existed in the highway commissioner. If properly ordered by the highway commissioner, the county superintendent could not have forbid or enjoined the purchase. It appears doubtful to us that the county superintendent did not know that this quantity of oil was being spread in this township over this period of time.

We hold that the fact that the highway commissioner executed documents which could not have been upheld as contracts did not remove from him the power to order materials for and work upon roads, so long as

the orders were within the statutory jurisdictional amounts. The township received the benefit of the materials and service. The materials and service were ordered by the official whose duty it was to do so.

■ Plaintiff concedes that the highway commissioner exceeded his authority as to the order of September 22, 1962. If, in fact, any of the other orders were "in reality part of one project costing more than $1,000," or constitute "essentially one transaction," this may be set up by way of defense.

■ We do not agree with plaintiff that "maintenance" is excluded from § 6–201.7, but the fact that the oil was used for maintenance would suggest that it was not "in reality part of one project" or "essentially one transaction."

The judgment of the circuit court is reversed and remanded with directions to sustain the dismissal of Count I and to rule the defendant to answer Counts II and III.

Reversed and remanded.

SMITH and CRAVEN, JJ., concur.