LLOYD EERTMOED *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF PEKIN, Defendant-Appellee.

Third District   No. 78-466

Opinion filed April 30, 1980.

Kirk W. Bode, of Bernardi, Ault & Bode, of Pekin, for appellants.

Ronald L. Keyser and V. Rodney Hallberg, both of Pekin, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

This is an appeal from the Circuit Court of Tazewell County dismissing the plaintiffs' complaint with prejudice. For the reasons stated hereafter, we reverse and remand.

Each of the plaintiffs in this case was a member of the Teamsters and Chauffeurs' local union No. 627, and was employed by the sanitation department of the defendant city of Pekin pursuant to an oral contract between the union and the city. The terms and conditions of employment were partially set forth in a document entitled "Articles of Agreement" hereafter referred to as the Agreement. Article 4 of this Agreement set out in some detail the sick-leave provisions. One of these provisions was that upon retirement an employee had the option of either taking off his accumulated sick leave days or receiving eight hours' pay for each accumulated day of sick leave.

The city of Pekin had a right to terminate the employees, and on August 31, 1976, the city so terminated the plaintiffs' employment and entered into a contract with Waste Management of Illinois Inc., a private rubbish disposal firm. Subsequently the plaintiffs requested the city to pay them for their accumulated sick leave pursuant to article 4 of the Agreement. The city refused to do so, and the plaintiffs filed suit. After its first dismissal motion was denied, the city filed an answer to the plaintiffs' complaint, and thereafter moved to dismiss the complaint on the grounds that the Agreement was unenforceable. The city based its argument on two grounds: First, it alleged that the Agreement was not signed by either party, and because it was an agreement that could not be fully performed within one year of the date of making it violated the Statute of Frauds (Ill. Rev. Stat. 1975, ch. 59, par. 1); second, the agreement was never passed or

approved by a majority vote of the Pekin city council in contravention of the procedure required by section 3—11—17 of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, par. 3—11—17). After a hearing on the motion to dismiss, the Circuit Court of Tazewell County dismissed the plaintiffs' complaint with prejudice. The court found, *inter alia*, that the doctrine of equitable estoppel was not applicable "for the action is not brought for alleged wages for services accepted and performed, but for fringe benefits of sick leave sought by plaintiffs under a collective bargaining agreement proposal that was never ratified by the City Council of the City of Pekin."

On appeal, the plaintiffs assert that the dismissal of their complaint was erroneous because the defendant city should be estopped from utilizing either the defense of Statute of Frauds or lack of statutory compliance as a bar to recovery of accumulated sick leave pay. Although the plaintiffs argue at length in their brief on the subject of the inapplicability of the Statute of Frauds, the defendant's brief contains no responsive argument on this particular issue nor did the defendant pursue its position on this subject on oral argument. Consequently, we consider the defendant to have conceded this point to the plaintiffs (Ill. Rev. Stat. 1977, ch. 110A, pars. 341(e)(7), (f)). This leaves two issues remaining for our resolution. First, is the doctrine of equitable estoppel available to the plaintiffs so as to bar the defendant city from denying liability under the terms of an oral contract admitted by the city to have been partially evidenced by the Agreement; second, if the doctrine of equitable estoppel is available, can the accumulated sick leave pay which the plaintiffs are seeking to recover be regarded as the equivalent of wages so as to make the doctrine applicable?

■■ There can be no doubt that the doctrine of equitable estoppel can be used against municipalities. Whether or not the doctrine is available depends upon an examination of the facts and circumstances of each particular case. "If under all of the circumstances, the affirmative acts of the public body have created a situation where it would be inequitable and unjust to permit it to deny what it has done or permitted to be done, the doctrine of estoppel may be applied against it." (*Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 39, 230 N.E.2d 465, 471.) However, estoppel cannot be used against a municipality when the action taken by that municipality is ultra vires, as the Second District points out *inter alia*, *Stahelin*:

"Contracts entered into by a municipality which are expressly prohibited by law, and which under no circumstances can be entered into, are void and ultra vires. They may not be rendered valid thereafter by estoppel or ratification on the part of the municipality. However, there is another class of municipal

contracts, distinct from the void type heretofore referred to, wherein the municipality has the power to enter into the contract, but where a portion thereof may be beyond its power, or its power may have been irregularly exercised. As to this class of contracts, a municipality may not assert its want of authority or power, or the irregular exercise thereof, where to do so would give it an unconscionable advantage over the other party. Municipal corporations, as well as private corporations and individuals, are bound by principles of common honesty and fair dealing. *McGovern v. City of Chicago*, 281 Ill. 264, 283, 284, 118 N.E. 3 (1917); *The People v. Spring Lake Drainage & Levee Dist.*, 253 Ill. 479, 500, 97 N.E. 1042 (1912); *Allen, v. Treat*, supra, 475, 476." 87 Ill. App. 2d 28, 41-42, 230 N.E.2d 465, 472.

What we must decide, then, is how the action of the city of Pekin in entering into the contract with the plaintiffs is to be classified. If the action of the city was ultra vires, estoppel cannot apply. If, however, the city's action constitutes a mere irregular exercise of power, then the estoppel doctrine may be utilized to bar the defendant city from asserting lack of statutory compliance as a defense to the plaintiffs' effort to recover their accumulated sick leave pay as claimed.

There is no dispute that the contract was made in the absence of approval by a majority vote of the Pekin city council in contravention of the requirements of section 3—11—17 of the Illinois Municipal Code. Section 3—11—17 provides in pertinent part:

> "The passage of all ordinances for whatever purpose, and of any resolution or motion (1) to create any liability against a city or (2) for the expenditure or appropriation of its money, shall require the concurrence of a majority of all members then holding office on the city council, including the mayor, unless otherwise expressly provided by this Code or any other act governing the passage of any ordinance, resolution, or motion; * * *." (Ill. Rev. Stat. 1975, ch. 24, par. 3—11—17.)

We agree with the defendant that the legislative use of the word "shall" manifests an intention that the statutory requirements be considered mandatory. (See *People ex rel. Smith v. Wabash Ry. Co.* (1941), 377 Ill. 68, 35 N.E.2d 325.) However, a review of the case law suggests that a contract entered into by a municipality in the absence of the required city council authorization should not always be treated as ultra vires. In *McGovern v. City of Chicago* (1917), 281 Ill. 264, 283, 118 N.E. 3, 10, the supreme court, quoting from *People ex rel. Stead v. Spring Lake Drainage Dist.* (1912), 253 Ill. 479, 500, 97 N.E. 1042, 1050, stated, "Contracts entered into by a municipality which are *prohibited* by express provision of the law, or which *under no circumstances* could be legally

entered into, are uniformly held to be *ultra vires* and void, \* \* \*." (Emphasis added.) Accord, *Stahelin v. Board of Education; Allen v. Treat* (1966), 72 Ill. App. 2d 466, 218 N.E.2d 250.

Most cases in which a contract entered into by a municipality has been found to be ultra vires indeed involve contracts prohibited by law. (See, *e.g., DeKam v. City of Streator* (1925), 316 Ill. 123, 146 N.E.2d 550.) Some cases have classified contracts entered into by municipalities in contravention of statutory requirements to be contracts prohibited by law, and consequently unenforceable. (*Bituminous Casualty Corp. v. City of Harrisburg* (1942), 315 Ill. App. 243, 42 N.E.2d 971.) In *Bituminous Casualty*, the court stated, "If there is a statute prescribing the method by which an officer or agent can bind a municipal corporation by contract, such method must be followed since there can be no implied contract or liability on the part of such municipal corporation." (315 Ill. App. 243, 251, 42 N.E.2d 971, 975, quoted in *Allen v. Treat* (1966), 72 Ill. App. 2d 466, 472, 218 N.E.2d 250, 253.) This statement, however, cannot be considered to be dispositive. In the case which quoted the above passage from *Bituminous Casualty, Allen*, the court went on to state, "The Illinois authorities and, indeed, the majority of courts in other jurisdictions [citations], hold that a municipality or other political subdivision may become obligated to pay the reasonable value of benefits accepted or appropriated by it *as to which it has the general power to contract.*" 72 Ill. App. 2d 466, 477, 218 N.E.2d 250, 255.

■■■ There can be no doubt that a municipality like the city of Pekin has the power to enter into employment contracts with sanitation workers.[1] This is not a case where the city lacks the general power to contract. It clearly has that power. Rather, this is a case in which the general power has been irregularly exercised as a result of the city's failure to obtain city council authorization pursuant to section 3—11—17 of the Illinois Municipal Code. Because the type of employment contract involved in this case is not one which is prohibited by express provision of law or is one which under no circumstances could be lawfully entered into, the action of the city cannot be classified as ultra vires. Consequently, the doctrine of equitable estoppel is available to the plaintiffs.

Our finding that the doctrine of equitable estoppel is available to these plaintiffs necessarily leads us to a consideration of the second issue, *i.e.,* whether the accumulated sick leave pay is to be regarded as wages so as to make the doctrine applicable. The trial court found the doctrine to be inapplicable because the action was brought not for wages but for "fringe benefits of sick leave." However, the relevancy of such a

---

[1] Despite the city's contention that the agreement was unenforceable, and that no accumulated sick leave pay is owed to these plaintiffs, it is obvious that the city appropriated money and paid the plaintiffs' wages under the contract they now claim is not binding.

distinction in regard to the applicability of equitable estoppel in the case is unclear. The court does not cite any authorities in support of its decision on this point, and the city's brief on appeal is similarly devoid of any authorities which support the proposition that the distinction between wages and fringe benefits is determinative. Although we have our doubts concerning the relevancy of the distinction, we feel that this accumulated sick leave pay, like earned vacation pay, more closely resembles wages, or deferred compensation, than fringe benefits. (See *Olson v. Rock Island Bank* (1975), 33 Ill. App. 3d 914, 339 N.E.2d 39; *Cummings v. Chicago, Aurora & Elgin Ry. Co.* (1952), 348 Ill. App. 537, 109 N.E.2d 378.) There can be no dispute that in the instant case the sick leave pay was earned.

All we have decided in this case is that the doctrine of equitable estoppel is available to the plaintiffs in their endeavor to recover accumulated sick leave pay. Whether article 4 of the Agreement accurately reflects the terms of the oral contract regarding sick leave pay, and if it does, whether plaintiffs can successfully utilize equitable estoppel to enforce the terms of article 4, are questions to be resolved by the trial court at a trial on the merits.

For the foregoing reasons, the judgment of the Circuit Court of Tazewell County is reversed and remanded for trial.

Reversed and remanded.

STOUDER, P. J., and SCOTT, J., concur.