WHEELING TRUST & SAVINGS BANK, Trustee, *et al.*, Plaintiffs-Appellants, *v.*
THE CITY OF HIGHLAND PARK, Defendant-Appellee.

Second District    No. 80-169

Opinion filed June 19, 1981.—Rehearing denied July 27, 1981.

Sidney Z. Karasik, of Chicago, for appellants.

Robert S. Baizer, of Marder & Baizer, of Highland Park, for appellee.

Mr. JUSTICE HOPF delivered the opinion of the court:

The plaintiffs appeal from an order of the circuit court of Lake County that granted the defendant's motion for judgment after plaintiff's case in chief was presented. Plaintiffs contend that they have established a *prima facie* case for specific performance of a contract with the city of Highland Park (hereinafter City).

The plaintiff, Wheeling Trust & Savings Bank, is the trustee under a trust in which the owners of the Highland Park Country Club (hereinafter the Club) are beneficiaries. On May 10, 1973, the Club, in response to an invitation for bids published by the City, submitted a bid for the purchase of three parcels of real estate and offered $300,000 conditional upon terms

that included the vacation of any plats of dedication of a number of proposed public streets including an unused portion of Western Avenue that was located on the property the City was selling. The Club enclosed 10 percent of the purchase price with their bid for the property. On May 14, 1973, the City acknowledged the Club's bid and directed corporate counsel to make a recommendation for the city council. On August 27, 1973, the city council considered and approved an ordinance to vacate the dedicated streets and approved the sale of the property to the Club. Prior to passage, a councilman proposed an amendment to reserve easements for a bicycle and footpath on the vacated portion. The ordinance, without being redrafted, was passed by a roll-call vote, and the council authorized the corporate counsel to draft an amendment for the easement and incorporate it for the mayor to sign and for it to be recorded.

Former Mayor Raymond Geraci testified that the land sale plan originated as a means for the City to raise revenue for construction of two fire stations. The landfill area to be sold had been filled to capacity. He further testified that once the ordinance was passed no further action would have to be taken by the council for the ordinance to become effective and that he had never signed the ordinance because the amendments had not been prepared.

After the ordinance was passed a citizens group complained that they were not satisfied with the reservation of a path but that they wanted a thoroughfare through the country club. An alternative solution, proposed by the Club, called for the dedication of a 33-foot section along the eastern boundary, but this was contingent on a neighboring country club (the Exmoor Club) dedicating 33 feet of its western boundary. Some time later the Exmoor Club stated that it would not agree to dedicate the property, and to date no agreement as to the bicycle path has been reached between the parties. The record reflects that the Club proposed these alternatives without waiving its rights to the vacation of Western Avenue as contained in the ordinance.

Despite the details yet to be agreed upon, on November 2, 1973, the parties closed the sale, and the Club deposited $270,000 in an escrow account while the City tendered a warranty deed. The Club had been leasing certain of these parcels from the City, and it received a return of its prepaid rent after the closing. The area purchased that was not previously leased by the Club was a landfill that had been filled to capacity and was to be graded over by the City according to the purchase agreement. This grading was not completed prior to the closing. Neither the escrow agreement nor the deed contained any provision that the City was to vacate the plat dedicating the streets in question or that the City was to grade the dump site. The Club deeded the parcels into three different trusts.

On July 25, 1975, the Club petitioned the court for specific performance. The complaint alleged that the City had breached its contract, that the vacation of the plat of dedication was unique, and that the Club had no adequate remedy at law. It requested that the City be ordered to vacate the plats dedicating the streets and to complete the grading of the dump site. In count II, it petitioned for damages it had incurred for grading at the dump site, for loss of membership and other damages; and in count III it petitioned for punitive damages.

At trial, the City made a motion in limine to exclude any evidence of what transpired at the city council meetings except the official records. The court reserved its ruling on this motion but admitted the transcripts of relevant meetings into evidence.

Former Mayor Geraci testified that the Club had conditioned its desire to purchase the land on the vacation of Western Avenue. The Club then offered into evidence the minutes of the meeting at which its bid and the ordinance to vacate Western Avenue were approved. The mayor stated that he didn't sign the ordinance because the amendment was not prepared but he considered the ordinance passed despite his failure to sign it. The Club then called Mr. Gluck, who had represented the Club as counsel during the negotiations of the contract. He testified that the City had accepted the terms of his letter dated May 10, 1973, which included the vacation of Western Avenue. He stated that the Club's Exhibit No. 9 was a copy of the ordinance vacating Western Avenue but that that ordinance did not include a reference to a five-foot bike path or other easements that were voted on as indicated by the minutes of August 27, 1973. Counsel for the Club stated that the parties had been negotiating the terms of the contract since the passage of the ordinance and that the parties had not reached a compromise solution, nor had the City indicated where the five-foot bike path was to be located. Counsel for the Club indicated that his client was willing to dedicate the 33 easternmost feet of property for a street if a neighboring club was willing to do the same but that this did not occur and that he had at all times preserved the Club's rights under the ordinance vacating Western Avenue.

The Club's manager testified at trial that the Club had to spend money on grading the land where the city dump had been in order to use it for golf course purposes. He further testified that the Club had lost several members because it was unable to enlarge the golf course as planned. After the Club rested its case the City moved for judgment pursuant to section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 64(3)), arguing that the Club had failed to prove that a contract had been entered into and that the only evidence that an agreement was entered into was the escrow agreement which did not include any provision for the vacation of the dedicated streets. It is also argued that

the ordinance to vacate Western Avenue was not passed pursuant to the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 1—1—1 *et seq.*) and thus was never an ordinance. The court entered judgment for defendant, finding there was no clear and convincing evidence of a binding contract free from ambiguity. Further, it added that had a contract been entered into it would be impossible for the court to find where the five-foot path should be located. The court considered the concept of inducement inapplicable.

The first issue raised by the Club is the contention that the trial court erred in granting the City's motion for judgment at the close of the Club's case because a *prima facie* case for specific performance was proved. The Club argues that the motion was granted in error under the rule of *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 407 N.E.2d 43.

It also contends that the court considered its request for specific performance to be a request for the court to compel the City to enact an ordinance vacating the dedicated street when, in fact, the ordinance was already passed.

The court in *Kokinis* clarified the standard by which the trial court should consider the evidence upon a motion by defendant for judgment after the plaintiff's case in chief. It stated:

> "When a defendant, as here, moves for judgment under section 64(3), the trial judge must first determine, as a legal matter, whether the plaintiff has made out a *prima facie* case. If he has not, the court should, without more, grant the motion and enter judgment in the defendant's favor." *Kokinis v. Kotrich*, at 155.

■■ ■ To establish a *prima facie* case for specific performance of a contract the agreement must be complete and must describe a particular tract of land. (*Bliss v. Rhodes* (1978), 66 Ill. App. 3d 895, 384 N.E.2d 512.) Such contracts should be enforceable on the complaint of either party thereto. (*Young v. Kich* (1938), 369 Ill. 29, 15 N.E.2d 692.) As stated by the Illinois Supreme Court in *Johnson v. Gianacakos* (1934), 356 Ill. 410, 413, 190 N.E. 691:

> "Specific performance of a contract cannot be demanded as a matter of right. Whether or not it shall be awarded rests in the sound discretion of the chancellor and is to be determined from all the facts and circumstances surrounding the case. Unless the record shows that the parties to a contract have entered into it fairly and understandingly specific performance will not be granted."

■■ We find that there was a contract for the sale of the land. The ordinance passed by the City, the exchange of valuable consideration, the escrow agreement and the transfer of warranty deed establish the existence of that contract. Collateral agreements like vacating a street or

grading a landfill site need not be set forth in the deed. *Rouse v. Brooks* (1978), 66 Ill. App. 3d 107, 383 N.E.2d 666.

The Club presented clear, definite and complete evidence to prove that the city council accepted the terms of the contract vacating Western Avenue. Some testimony tended to indicate that this ordinance was a counteroffer to the Club. There was also evidence at trial indicating that neither party was satisfied with the amendment to the ordinance and that this tended to negate some of the Club's evidence.

In *Kokinis* the court found that if the plaintiff has proved a *prima facie* case then the judge must weigh the evidence, which may result in the negation of some of the evidence necessary to the plaintiff's *prima facie* case. If this occurs, the court should grant the motion for defendant and enter judgment in his favor. The court went on to say:

> " * * * On the other hand, if sufficient evidence necessary to establish the plaintiff's *prima facie* case remains following the weighing process, the court should deny the defendant's motion and proceed as if the motion had not been made." *Kokinis v. Kotrich*, at 155.

On appeal the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 349 N.E.2d 399.

In the case before us the trial court found that the parties had not entered into a binding or enforceable contract in which the parties agreed to vacate Western Avenue. The Club contends that this finding was against the manifest weight of the evidence. The question of whether the City entered into an enforceable agreement to vacate Western Avenue requires that we examine the Illinois Municipal Code. The authority for a city to vacate a street arises from sections 11—91—1 and 11—91—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, pars. 11—91—1, 11—91—2). The vacation of a street by a municipality must be by ordinance. (*Arlington Heights National Bank v. Village of Arlington Heights* (1965), 33 Ill. 2d 557, 213 N.E.2d 264.) The Club contends that the proper procedure was followed when the city council approved the ordinance on August 27, 1973. Section 11—91—2 provides that when a street is vacated by ordinance, title to the property vests in the abutting landowners unless a deed or other instrument provides otherwise.

The record indicates that not all provisions of the Municipal Code relating to the passage of ordinances were adhered to. As such, the City asserts that the ordinance is void and Western Avenue was never vacated. The City of Highland Park is a commission-city manager municipality governed by article IV of the Municipal Code. Section 4—5—12 of the Code (Ill. Rev. Stat. 1979, ch. 24, par. 4—5—12) provides that upon every vote the "yeas" and "nays" shall be called and recorded. Every motion,

resolution, or ordinance shall be reduced to writing and read before a vote is taken thereon. These requirements have been deemed mandatory and require strict compliance. (*People ex rel. Anderson v. Chicago & North Western Ry. Co.* (1947), 396 Ill. 466, 71 N.E.2d 701.) The record reflects that a roll call vote was taken, that the ordinance had been drafted and reduced to writing and that it was read prior to its approval by the council. A drawing or "linen" depicting the plat of vacation was presented to the council for their review. The ordinance however, was not redrafted prior to the voting. There is no statutory requirement, however, that amendments added to an ordinance prior to its passage must be in writing.

The record further reflects that the mayor failed to sign the ordinance and that the clerk failed to record and publish it as required by section 4—5—12 (Ill. Rev. Stat. 1979, ch. 24, par. 4—5—12.) These requirements, however, are deemed directory only. (5 McQuillin, Municipal Corporations §16.71 (3d ed. 1969).) These requirements are merely administrative procedures which, if strictly enforced, would be a delegation of authority in approving or disapproving ordinances to the administrative officers. *Whalin v. City of Macomb* (1875), 76 Ill. 49; *cf. Moss-American, Inc. v. Fair Employment Practices Com.* (1974), 22 Ill. App. 3d 248, 317 N.E.2d 343.

Accordingly, because the city council voted to vacate Western Avenue, the ordinance was passed and effectively vacated Western Avenue despite the failure of the mayor to sign it and the clerk to record and publish it. The legislative requirements were substantially complied with. *Rogers v. City of Mendota* (1916), 200 Ill. App. 254.

The two ordinances of August 27, 1973, can be characterized as either acceptance of the bid by the Club or as a counteroffer by the City. Even if characterized as a counteroffer, it was accepted by the Club on the same night by Mr. Gluck, who was authorized to bind the Club. The testimony of the mayor indicated that the contract was concluded and enforceable and that the drafting of the amendment would not require further action by the council.

Nonetheless, the parties did want to negotiate some terms of the contract, and it appears that they have yet to agree on the location of the bike path, though the Club contends in its brief that this is a determination for the City to make. We hold that the ordinances passed by the City of Highland Park were a clear indication of the City's intent to transfer title and vacate Western Avenue. Subsequent acceptance of consideration by the City at the closing and transfer of warranty deed clearly indicate the continued belief in the finality of the contract. For these reasons, we hold that the Club did prove a *prima facie* case and that the granting of the City's motion at the close of the Club's case was against the manifest weight of the evidence.

The order of the trial court infers that the court had no power to direct a legislative act. Because we have found that the ordinance was passed and became effective when so passed, the courts are not interfering with the legislative process of the City.

Further, it is clear that the parties agreed that the vacation be subject to a five-foot easement. Because no council action would be required to locate where within the vacated Western Avenue strip this would be located, it is a ministerial act for the appropriate city officials to locate said easement within the 66½-foot width of vacated Western Avenue, or elsewhere if both parties can so agree.

The City contends that the trial court erred in denying their motion in limine to exclude any evidence pertaining to the city council meetings except for the official records. The contention is that only the minutes of the meeting listing the votes of the council members on the various resolutions and ordinances were the official city records. *City of Belleville v. Miller* (1913), 257 Ill. 244, 100 N.E. 946.

The City's contention is not supported by section 3—10—7 of the Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—10—7), which requires only that papers be filed and certified with the clerk in order for them to be competent as evidence in court.

In the case at bar the word-for-word transcripts of the meetings were compiled by the clerk's office and certified by it. The City presented no contradictory evidence, either oral or written, to refute the authenticity of the proposed evidence. Accordingly, the evidence was properly admitted.

The second issue raised by the Club urges that the City is estopped from asserting the invalidity or nonexistence of the ordinance. Because of our previous finding that the ordinance was valid, we need not consider this issue in detail. The city is estopped to deny that they are without the authority or power to pass such an ordinance or that the ordinance is invalid. There is no evidence in the record to indicate that the ordinance passed was *ultra vires*. To hold otherwise would grant an advantage to municipalities that is not enjoyed by any level of government. *Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 230 N.E.2d 465; *Eertmoed v. City of Pekin* (1980), 83 Ill. App. 3d 362, 404 N.E.2d 942.

Judgment of the circuit court of Lake County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.