D. C. CONSULTING ENGINEERS, INC., Plaintiff-Appellee, v. THE BATAVIA PARK DISTRICT, Defendant-Appellant.

Second District    No. 2—85—0419

Opinion filed May 5, 1986.

Bruce A. Brown, of Goldsmith, Thelin, Schiller & Dickson, of Aurora, for appellant.

No brief filed for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Batavia Park District (the district), appeals from the trial court's judgment for the plaintiff, D. C. Consulting Engineers, Inc., in the amount of $550 on plaintiff's small-claims, quasi-contract action. The district claims that the alleged oral contract was not made in accordance with applicable statutes and thus it is not liable thereon.

On approximately August 19, 1983, Daniel Curanti, the president and sole shareholder of the plaintiff, had a conversation with Chuck Kuhn, the superintendent of the park district. The defendant was having unspecified problems with its maintenance building at 427 South River Street, in Batavia. Kuhn told Curanti that Kuhn needed a structural engineer to investigate the problems with the maintenance building. Curanti later met with Kuhn and park district executive director Betsy Dobbs, and at their request proceeded to inspect the building and prepare a building integrity report. He also submitted an invoice for $2,845, which was presented to and approved by the district commissioners.

On October 20, 1983, Curanti met at the building with Kuhn, Dobbs and four of the district commissioners to review the report and discuss means of effectuating the necessary repairs. In the course of the conversation, one of the commissioners requested Curanti to submit a bid to do the repair drawings. At no time during this meeting did anyone authorize Curanti to prepare the plans and specifications

for the repairs.

The following Monday, October 24, Curanti called Kuhn and advised him that his estimate to do the job was $2,200—40 hours of work at $55 per hour. Kuhn told Curanti that he would have to get back to him. Later that day, Kuhn called Curanti back and told him that, since the repair work had to be done, he, Curanti, "might as well start doing it." At trial, Kuhn denied making this statement, but the trial court found that he had made it. Thereafter, Curanti began working on the repair project. His records reflected a total of 10 hours spent on the project.

On approximately October 28, Curanti was at the maintenance building when he had a conversation with Dobbs who told him that the park district commissioners had not authorized any work on the repair project and that Curanti should discontinue his efforts in that regard.

On November 2, the district received an invoice from the plaintiff for $850. The district refused to pay the bill, except for $300 for the time spent at the October 20 meeting. This was paid. After a subsequent demand for payment was refused Curanti filed this action in the circuit court of Kane County.

The trial court found that Curanti was entitled to rely on Kuhn's representations authorizing plaintiff to do the work and that Curanti was entitled to recover in *quantum meruit* for the time he spent on the project. The court awarded Curanti $550 plus costs.

Initially, we note that, although no appellee's brief has been filed in this case, the record is simple and this court can easily decide the merits of the issue presented. *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128, 133.

The district advances two arguments as to why it was without power to make the alleged contract, thus requiring reversal of the trial court's judgment. Since we find the first argument dispositive, we do not reach the second. The defendant relies on section 4—6 of the Park District Code (Ill. Rev. Stat. 1983, ch. 105, par. 4—6) for the proposition that Kuhn was without authority to create any obligation on the part of the district without prior approval of the park district board. Therefore, any such contract was void, and the district could incur no liability thereon. Section 4—6 reads as follows:

> "No member of the board of any park district, nor any person, whether in the employ of said board or otherwise, shall have power to create any debt, obligation, claim or liability, for or on account of said park district, or the monies or property of the same, except with the express authority of said board con-

ferred at a meeting thereof and duly recorded in a record of its proceedings." Ill. Rev. Stat. 1983, ch. 105, par. 4—6.

■ We have found no case which specifically construes section 4—6. The general rule, however, is that when an employee of a municipal corporation purports to bind the corporation by contract without prior approval, in violation of an applicable statute, such a contract is utterly void. There can be no implied contract. (*Roemheld v. City of Chicago* (1907), 231 Ill. 467; *Selby v. Village of Winfield* (1929), 255 Ill. App. 67.) Such a contract cannot be validated by principles of ratification or estoppel. (*Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286; *Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852.) One who deals with a municipal corporation is presumed to know the extent of its power to contract. (*DeKam v. City of Streator* (1925), 316 Ill. 123.) As the supreme court stated in *DeKam*, the corporation " 'cannot be estopped to aver its incapacity, which would amount to conferring power to do unauthorized acts simply because it has done them and received the consideration stipulated for.' " 316 Ill. 123, 136-37.

■ In this case, there was no evidence that the park district board had voted to authorize such an expenditure. Thus, Kuhn could not legally bind the district. The purported contract was void from the beginning, and the fact that the district may ultimately have benefited from Curanti's efforts cannot serve to validate the contract.

The trial court, while acknowledging cases such as *Diversified Computer Services, Inc. v. Town of York* (1985), 104 Ill. App. 3d 852, and *Ligenza v. Village of Round Lake Beach* (1985), 133 Ill. App. 3d 286, based its decision on a long-recognized distinction between cases in which the municipal corporation was utterly without power to make the contract in question and cases in which it had the power, but exercised it in an irregular fashion. In the latter case, the contract is merely voidable and the plaintiff may recover in *quantum meruit*. (*Hall v. County of Cook* (1935), 359 Ill. 528; *cf. Mathew v. Town of Algonquin* (1972), 3 Ill. App. 3d 429.) This case, however, is clearly in the former class. The facts are nearly identical to those in *Roemheld v. City of Chicago* (1907), 231 Ill. 467, and *Selby v. Village of Winfield* (1929), 255 Ill. App. 67, where the contracts were held to be utterly void.

The park district's second argument is that the contract was void because no prior appropriation had been made by the board, as required by section 4—4 of the Park District Code (Ill. Rev. Stat. 1983, ch. 105, par. 4—4). While we need not reach this argument, we note in passing that it is unavailing. *Diversified Computer Services* and

# 64

*Ligenza* dealt with multiyear contracts, where no appropriation could have been made in advance. Here the alleged contract was payable within the then current fiscal year. More importantly, there was no evidence that the contract in question was not covered by a prior appropriation of the district board. Despite the district's suggestion to the contrary, the supreme court has stated that the municipal corporation has the burden of proving the lack of a prior appropriation. *Hall v. County of Cook* (1935), 359 Ill. 528, 540.

Since we hold, however, that Kuhn was without authority to bind the park district by his representations to Curanti, the contract was void. The park district is not estopped to assert its invalidity, even though it may have received some benefit therefrom. For these reasons, we reverse the judgment of the circuit court of Kane County.

Reversed.

SCHNAKE and STROUSE, JJ., concur.