SOUTH SUBURBAN SAFEWAY LINES, INC., Plaintiff-Appellee and Cross-Appellant, v. REGIONAL TRANSPORTATION AUTHORITY, Defendant-Appellant and Cross-Appellee.

First District (3rd Division)   No. 86—0068

Opinion filed February 3, 1988.—Rehearing denied March 17, 1988.

George J. Brown, of Chicago (Earl L. Neal and Richard F. Friedman, of counsel), for appellant.

Ralph G. Scheu and William J. Harte, both of Chicago, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:
Plaintiff, South Suburban Safeway Lines, Inc. (SSSL), filed a two-count amended complaint against defendant, the Regional Transportation Authority (RTA), for a declaratory judgment as to the existence

of a contract between the parties and as to certain subsidies allegedly due from the RTA. The circuit court of Cook County entered judgment for SSSL on count I for $3 million and for the RTA on count II for $68,000. The RTA appeals from the judgment on count I seeking reversal and SSSL appeals therefrom seeking a larger judgment.

In its amended complaint, SSSL alleged that its president, O. William Olson, and the RTA's then chairman, Milton Pikarsky, entered an agreement in May 1977 whereby SSSL transferred its operating rights and intangibles in, and suspended operations on, its "Chicago routes," leaving the Chicago Transit Authority (CTA) as the sole provider of bus service on those routes. SSSL further alleged that this agreement was made pursuant to the RTA's ordinance No. 75—192 and a resolution of the RTA's board of directors passed May 5, 1977. It also alleged that the agreement resulted in a net profit to the CTA of approximately $1 million per year and a reduction of a similar amount in the subsidy which the RTA paid the CTA. SSSL alleged that the agreement by its terms reserved for future determination the value to be paid SSSL as a result of the agreement and that the RTA refused to negotiate or determine this amount. Finally, SSSL alleged that it would not have entered the agreement but for the authority given the RTA's chairman to negotiate the acquisition of SSSL but would have relied on the RTA's representations that the negotiations to acquire SSSL would continue. SSSL prayed that the May 1977 agreement be declared a valid and binding contract between the parties and for $16,700,000 in damages.

After a bench trial, the court entered judgment for SSSL and awarded it $2,932,000. The trial court found that the agreement sued upon did not provide for the payment of moneys to SSSL for the Chicago routes ceded to the RTA and that any rights of SSSL to relief from the RTA could not be predicated on the express terms of the May 1977 agreement but "must be predicated on a theory of implied contract or estoppel." The court examined the rules pertaining to contracts implied in fact and to contracts entered into by municipal corporations. It recognized, as a general Illinois rule, that contracts made by municipal corporations for the payment of money are *ultra vires* and void unless an appropriation has been made for the expenditure of the funds. It also noted that a party who contracts with a municipal corporation is presumed to know whether the corporation is empowered to act. However, the court ultimately applied the rule that a municipal corporation may not avoid a contract within its powers to make on the grounds that a portion of it is beyond its powers or that it may have exercised its powers irregularly in entering into the con-

tract where to do so would give the municipal corporation an unconscionable advantage over the other party. *A. S. Schulman Electric Co. v. Village of Fox Lake* (1983), 115 Ill. App. 3d 746, 750, 450 N.E.2d 1356; *Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 42, 230 N.E.2d 465.

The court found that the RTA had the power, through its authorizing legislation, to negotiate for and acquire SSSL's "Chicago routes" and did so through its ordinances and the agreement sued upon. The court concluded that allowing the RTA to avoid paying for these routes would be unconscionable and contrary to Illinois law relating to contracts implied in fact. The court ruled that, under either an implied contract or estoppel and as a matter of law, the letter agreement of May 1977, as implemented by RTA ordinance No. 77–124 and the RTA's assumption of SSSL's rights and obligations with respect to its "Chicago routes" obligated the RTA to pay SSSL the value of those routes.

On October 28, 1975, the RTA board of directors passed RTA ordinance No. 75–192, which authorized its chairman, or a negotiator directed by him, to negotiate the terms of the RTA's acquisition of the public transportation facilities of four private transit carriers, including SSSL. On May 5, 1977, the board passed ordinance No. 77–124. That ordinance approved the revisions to the subject routes of SSSL, *i.e.,* Western Avenue, Halsted Street, and Altgeld Gardens, proposed by Brian J. Cudahy, the RTA's then director of marketing and planning. The ordinance further provided that the service revisions affecting the Altgeld Gardens route would be reexamined and a report would be made to the board in four months. After passage of this ordinance, SSSL's president, O. William Olson, prepared and signed the letter agreement pursuant, SSSL alleges, to the request and instructions of Bernard Ford, the RTA's then director of transportation. The letter agreement stated that SSSL was willing to accept the route changes proposed by Cudahy and approved on May 5. It further stated: "This will confirm our agreement that the [RTA] and this company reserve for future determination the value, if any, of the operating rights and intangibles which will be transferred from this company to the [RTA]." There was a space at the bottom of the letter for a representative of the RTA to sign if it accepted and approved the "agreement and reservation of determination of value, if any, of the aforesaid operating rights and intangibles." This space was dated May 9, 1977, and signed by the RTA's then chairman, Milton Pikarsky. After obtaining the requisite approval of the Illinois Commerce Commission, SSSL discontinued its service on the routes af-

fected by the agreement on September 25, 1977.

On appeal, the RTA first contends that the letter agreement of May 9, 1977, was merely a reservation of rights, not an agreement to compensate SSSL for its acquiescence to a modification of the subject bus routes, and that, as an agreement to pay compensation, it was invalid because it lacked the required approval of the RTA board of directors. In its cross-appeal, SSSL contends that the trial court's award of damages was inadequate. We find the first issue the RTA raises dispositive and therefore need not address its other issues or SSSL's cross-appeal.

The RTA asserts, *inter alia*, that because its board of directors never approved any contract with or payment to SSSL, "no contract, implied or express, can be valid." It also asserts that estoppel establishing an implied contract does not apply to municipal corporations and that SSSL's president had the duty, as one dealing with a municipal corporation, to take notice of limitations on its power to contract and of any specific statutory provisions governing the RTA's letting of contracts.

SSSL asserts that the trial court's determination that the letter agreement was validly entered into by the parties and gave rise to a contract for the payment of compensation to it was not against the manifest weight of the evidence and that the RTA is estopped by its conduct from denying the contract. It further asserts that the route modifications were approved by passage of RTA ordinance No. 77–124 on May 5, 1977, and by its chairman's acceptance, by signing, of the letter agreement on May 9, 1977. SSSL asserts these actions conclusively demonstrate that the contract was approved, as required, by the RTA board of directors.

The trial court concluded as a matter of law that the RTA was obligated to pay SSSL the value of SSSL's Chicago routes ceded to the RTA. Where facts are basically uncontroverted and the real issue is the trial court's application of the law to such facts, a question of law is presented and the rule that a court of review may not set aside the trial court's findings unless contrary to the manifest weight of the evidence is inapplicable. Instead, we may determine the correctness of the ruling on the question of law independently of the trial court's judgment. (*Crum v. Gulf Oil Corp.* (1979), 70 Ill. App. 3d 897, 899, 388 N.E.2d 1008.) After such review, we believe the trial court erred in reaching the conclusion of law on which it predicated judgment for SSSL.

In a contract implied in fact, a contractual duty is imposed by reason of a promissory expression inferred from facts, circum-

stances and expressions by the promisor showing an intent to be bound. (*In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 461 N.E.2d 1075.) Such contract may be proved by circumstances showing that the parties intended to contract and by the general course of dealing between them. However, there can be no promise implied where the relation between the parties excludes the inference that they were dealing on a footing of contract. (*Rush v. Estate of Rush* (1960), 27 Ill. App. 2d 242, 246-47, 169 N.E.2d 538.) As the trial court failed to recognize, however, no contract or liability may be implied against a municipal corporation where there has been a failure to comply with a statute or ordinance prescribing the method by which an officer or agent can bind such corporation by contract. *Roemheld v. City of Chicago* (1907), 231 Ill. 467, 83 N.E. 291; *Wacker-Wabash Corp. v. City of Chicago* (1953), 350 Ill. App. 343, 112 N.E.2d 903; *Bituminous Casualty Corp. v. City of Harrisburg* (1942), 315 Ill. App. 243, 42 N.E.2d 971; *Selby v. Village of Winfield* (1929), 255 Ill. App. 67; *Arnold v. Village of Ina* (1927), 244 Ill. App. 239.

As more fully stated in a leading treatise:

> "[I]f a statute or *** charter requires certain express contracts of a municipality to be preceded by certain steps or to be made in a certain way, and expressly or impliedly forbids the execution of such contract in any other way, then no implied contract can arise when the express contract is invalid for failure to comply with such statutory or charter provisions, *nor where, in the absence of an express contract, the implied contract would have come within such statute if it had been express.* The fiction of an implied promise or agreement, or the theory of a liability based on quantum meruit, cannot be substituted for an express contract which is void for noncompliance with mandatory terms of the statute or charter." (Emphasis added.) 10 E. McQuillin, The Law of Municipal Corporations §29.112, at 516, (3d ed. rev. 1981), citing, *inter alia, Gregg v. Town of Bourbonnais* (1945), 327 Ill. App. 253, 64 N.E.2d 106.

"In other words, a municipal corporation cannot be obligated upon an alleged implied contract which is *ultra vires, contrary to statutes or charter provisions,* or contrary to public policy." (Emphasis added.) 10 E. McQuillin, The Law of Municipal Corporations §29.111(a), at 514 (3d ed. rev. 1981).

█ This rule of law is, as most are, not without some contradiction. (See 10 E. McQuillin, The Law of Municipal Corporations §29.112, at 517, 518 n.4, 519 n.5 (3d ed. rev. 1981) (and Illinois cases cited therein).) However, we believe it reflects the current Illinois au-

thority on the subject of a municipal corporation's liability for implied contracts. (See *D. C. Consulting Engineers, Inc. v. Batavia Park District* (1986), 143 Ill. App. 3d 60, 492 N.E.2d 1000.) As such, we conclude the trial court erred in predicating its judgment for SSSL on the law of implied contract.

We so conclude in view of section 3.05 of the Regional Transportation Authority Act, which provides, *inter alia*, that the affirmative votes of at least five of the RTA's nine directors "shall be necessary for approving any contract or agreement" entered into by the RTA. (Ill. Rev. Stat. 1977, ch. 111⅔, par. 703.05.) As the trial court ruled, SSSL could not base its claim on the letter agreement sued upon because its express terms did not provide for payment to SSSL for the routes ceded to the RTA. As the trial court failed to recognize, however, even if it had purported to be an express contract to pay SSSL, the letter agreement would have been void due to the failure to comply with section 3.05 of the Regional Transportation Authority Act, prescribing the method by which the RTA can be contractually bound. That failure led to the court's concomitant failure to recognize that the noncompliance with section 3.05, which would have rendered an express contract void, also precluded a finding of an implied contract binding the RTA to pay SSSL.

■ The court further erred in predicating its finding of an implied contract on a rule which, properly construed, is not applicable to this case. That rule is that, where a contract is within its powers, a municipal corporation may not avoid it on the grounds that it exercised those powers irregularly in entering into the contract or that a portion of the contract is beyond its powers, where it would thereby achieve an unconscionable advantage over the other party. (*Stahelin v. Board of Education* (1967), 87 Ill. App. 2d 28, 41-42, 230 N.E.2d 465.) The court erred in applying this rule because the express contract alleged here, even if entered into by the parties, would have been void *ab initio* due to a total failure to comply with section 3.05 of the Regional Transportation Authority Act, not because the RTA exercised its powers irregularly in entering it. See *D. C. Consulting Engineers, Inc. v. Batavia Park District* (1986), 143 Ill. App. 3d 60, 492 N.E.2d 1000 (contract allegedly entered into by defendant's superintendent without statutorily required express authority of its board was void, because defendant was utterly without power to so contract, not merely voidable because of irregular exercise of power).

The trial court erred in applying the rule cited for a second reason. The rule allows the enforcement of contracts into which municipal corporations actually enter where they would otherwise gain an

unconscionable advantage over the other contracting party. That consideration is not applied to the rule prohibiting the implication of contracts where there is no compliance with the statutorily prescribed method by which municipal corporations may be contractually bound. As such, the trial court erroneously held that allowing the RTA to avoid paying for SSSL's routes would be unconscionable and contrary to Illinois law relating to contracts implied in fact.

■ Because the controlling rule admits of no exception, the court also erred in concluding that estoppel also supported the judgment for SSSL. In *Roemheld v. City of Chicago* (1907), 231 Ill. 467, 83 N.E. 291, the court, after citing the controlling rule, stated:

> "The performance of work or furnishing material for a city and *the acceptance of the resulting benefits will not render it liable to pay if the work [is] not authorized. The fact that the labor is beneficial will not create a liability.* [Citation.]" (Emphasis added.) (*Roemheld,* 231 Ill. at 471.)

Similarly, in *Wacker-Wabash Corp. v. City of Chicago* (1953), 350 Ill. App. 343, 112 N.E.2d 903, the court stated:

> " 'Everyone is presumed to know the extent of the powers of a municipal corporation, and it cannot be estopped to aver its incapacity, which would amount to conferring power to do unauthorized acts, simply because it has done them and received the consideration stipulated for.' " (*Wacker-Wabash Corp.,* 350 Ill. App. at 354, quoting *Selby v. Village of Winfield* (1929), 255 Ill. App. 67, 77.)

We conclude the RTA was not estopped to deny its incapacity, due to the lack of the required approval of the express contract alleged here, to have entered such a contract.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is reversed and we hereby enter judgment for the RTA. 107 Ill. 2d R. 366(a)(5).

Reversed.

WHITE, P.J., and RIZZI, J., concur.