# Illinois Official Reports

## Appellate Court

---

**Direct Energy Business, LLC v. City of Harvey**, 2021 IL App (1st) 200629

---

| | |
|---|---|
| Appellate Court Caption | DIRECT ENERGY BUSINESS, LLC, and DIRECT ENERGY BUSINESS MARKETING, LLC, Plaintiffs-Appellees, v. THE CITY OF HARVEY, Defendant-Appellant. |
| District & No. | First District, Second Division<br>No. 1-20-0629 |
| Filed<br>Modified upon<br>denial of rehearing | May 18, 2021<br><br>July 20, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 18-L-8249; the Hon. Margaret A. Brennan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Emanuel C. Welch and ShawnTe Raines, of Ancel Glink, P.C., of Chicago, for appellant.<br><br>Nicholas R. Lawson (*pro hac vice*) and Jason A. Richardson, of McDowell Hetherington LLP, of Houston, Texas, for appellees. |

Panel                    JUSTICE COBBS delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion.

## OPINION

¶ 1      This appeal involves a dispute over payment for electricity provided to defendant, the City of Harvey (City), by plaintiffs, Direct Energy Business, LLC, and Direct Energy Business Marketing, LLC (collectively, Direct Energy). When the City refused to pay for some of the electricity it was provided, Direct Energy filed a complaint alleging one count of breach of contract and one count of *quantum meruit*. The circuit court granted summary judgment for Direct Energy on the breach of contract claim and ordered the City to pay in excess of $1 million. The City now appeals, and for the following reasons, we reverse the grant of summary judgment and remand the matter for further proceedings.

¶ 2                        I. BACKGROUND

¶ 3      The following facts are taken from the parties' pleadings, motions, and exhibits.

¶ 4      Direct Energy is a retail energy provider that supplies gas and power to customers nationwide, including in Illinois. The City is an Illinois municipality of approximately 25,000 residents located south of Chicago. Prior to 2016, the City contracted with Commonwealth Edison Company (ComEd) to provide its electricity. In June 2016, Direct Energy began delivering electricity to the City.

¶ 5      On August 1, 2018, Direct Energy filed a two-count complaint seeking to recover under a theory of breach of contract (count I) or alternatively, *quantum meruit* (count II). The complaint alleged that the City's switch from ComEd to Direct Energy occurred pursuant to a written contract between the parties executed in November 2015. A copy of the purported contract, which was attached to the complaint, reflects that the City agreed to purchase its electricity from Direct Energy for a two-year period beginning in May 2016. The document bears the name and signature of Rufus A. Fisher Jr., identified as the City's "Director of Public Utilities." The complaint also alleged that Direct Energy sent the City monthly invoices for the electricity, which the City paid without protest until December 2016. However, the City did not pay for electricity that Direct Energy provided from December 2016 through April 2017.

¶ 6      The City filed an answer, denying all substantive allegations in Direct Energy's complaint.

¶ 7      On November 1, 2019, Direct Energy filed a motion for summary judgment. Attached to the motion were transcripts from the depositions of Fisher and Louis Williams, the City's comptroller.

¶ 8      According to the transcripts, Fisher testified that in November 2015 he was employed as the director of public works for the City, a position he had held since approximately 2011. For some period prior to November 2015, Fisher had the authority to "sign off on contracts" for the City, but lost that ability when Williams became comptroller around 2014. When Williams took over, he informed Fisher that "all contracts for the [C]ity need to go through him." Fisher further testified that he had no discussions with Direct Energy or any conversations with City officials about Direct Energy until the filing of the instant lawsuit. The only conversation

Fisher had about the City's utility providers was in response to an inquiry from an energy broker he knew as "Mr. Bob." Fisher merely explained to "Mr. Bob" that he did not have the authority to enter into an agreement and referred him to Williams. Fisher denied signing the written agreement attached to the complaint and denied authorizing anyone to do so on his behalf.[1] He did not know who was providing the City's electricity or if the City had ever disputed any charges for electricity.

¶ 9 Williams testified that he was not a City employee but became an "independent contractor" in 2014 when the City "outsourced its comptroller function" to his firm. As comptroller, he did not have the authority to enter into utilities contracts on the City's behalf. Instead, those contracts "would have to be approved by the City Council." Williams believed that the City had always received its electricity from ComEd until his office started receiving monthly invoices from Direct Energy in the middle of 2016. Upon receiving those invoices, Williams contacted Direct Energy and requested a copy of their contract with the City, which was provided. Williams paid the Direct Energy invoices for five or six months and did not notify Direct Energy that the City disputed any of the charges. At some point, the City requested that Direct Energy close its account, as there was no valid contract between the parties.

¶ 10 Also attached to Direct Energy's motion was an affidavit from Holly Fuller, the head of receivables management for Direct Energy. Fuller averred that the City owed Direct Energy a total of $1,037,149.54, which represented the sum of (1) $285,383.17 in unpaid invoices for electricity provided by Direct Energy, (2) $360,383.38 in City debt that Direct Energy purchased dollar-for-dollar from ComEd, and (3) $391,027.99 in interest.

¶ 11 The City filed a response to Direct Energy's motion, arguing that summary judgment was inappropriate because Direct Energy had not shown the existence of a valid contract between the parties. Specifically, the City contended that any agreement was void because it was not agreed to by the city council as the municipal corporate authority or by someone who had been delegated the power to act on behalf of the city council. The City also argued that Direct Energy was not entitled to summary judgment on its *quantum meruit* claim because, as the City was unaware of the change in electricity providers, it did not knowingly accept Direct Energy's services. Additionally, the City contended that there remained a question as to the measure of damages because (1) Direct Energy charged the City for certain facilities that ComEd previously provided for free and (2) Direct Energy charged the City for a parking lot owned by Metra rather than the City.

¶ 12 On January 31, 2020, the circuit court entered an order granting Direct Energy's motion for summary judgment on the breach of contract claim and entered judgment against the City in the amount of $1,037,146.54. This appeal followed.

¶ 13 II. ANALYSIS

¶ 14 This court reviews an order granting summary judgment *de novo*, meaning that we perform the same analysis as a trial judge would. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. Summary judgment is a " 'drastic means of disposing of litigation and, therefore, should be granted only when the right of the moving party is clear and free from doubt.' " *Id.* (quoting *Mashal v. City of Chicago*, 2012 IL 112341, ¶ 49). Nevertheless,

---

[1]Although Fisher testified that he did not sign the contract, the City did not raise a forgery argument in the circuit court and conceded at oral arguments that Fisher signed the contract.

summary judgment is appropriate where the pleadings, depositions, and affidavits on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* This court may affirm a trial court's grant of summary judgment on any basis appearing in the record, regardless of the trial court's reasoning. *Flores v. Westmont Engineering Co.*, 2021 IL App (1st) 190379, ¶ 24.

¶ 15 Where the plaintiff is the party moving for summary judgment, it must show that the materials relied upon establish the validity of its factual position on all the contested elements of the cause of action. *Direct Auto*, 2013 IL App (1st) 121128, ¶ 43. Only if the plaintiff satisfies its initial burden of production does the burden shift to the defendant to present evidence that there is a genuine issue of material fact or that the moving party is not entitled to judgment as a matter of law. *Performance Food Group Co. v. ARBA Care Center of Bloomington, LLC*, 2017 IL App (3d) 160348, ¶ 18. The burden of persuasion remains with the moving party at all times. *Id.*

¶ 16 As a preliminary matter, we note that the City does not dispute the part of the circuit court's judgment representing the debt that Direct Energy purchased from ComEd, which totaled $360,383.38. Accordingly, we affirm that portion of the judgment. See *Young v. Lemons*, 266 Ill. App. 3d 49, 51 (1994).

¶ 17 Direct Energy's remaining claims, which the City does dispute, sounded in breach of contract, the elements of which are that (1) there was a valid and enforceable contract between the parties, (2) the plaintiff performed the contract, (3) the defendant breached the contract, and (4) the plaintiff suffered damages as a result. *Id.* ¶ 19. "In order to form a valid contract, there must be an offer and acceptance, consideration, and valid and certain contractual terms." *Lindy Lu LLC v. Illinois Central R.R. Co.*, 2013 IL App (3d) 120337, ¶ 21.

¶ 18 The dispute in this case is focused on the first element: formation. To that end, we first address Direct Energy's contention that the City waived its ability to contest that a valid contract was formed between the parties. Direct Energy argues that, although the City maintains that it never agreed to purchase electricity from Direct Energy, the City's "real argument" is that Fisher lacked the capacity to bind the City to the written agreement, which Direct Energy asserts is an affirmative defense that must be affirmatively plead. We find that the City did not waive its challenge to the enforceability of the agreement. The record shows that the City maintained that there was no valid contract throughout the proceedings below, both in its answer and in response to Direct Energy's motion for summary judgment. Nor can Direct Energy seriously claim it was surprised by the City's position, as both Fisher and Williams testified in their respective depositions that Fisher was not authorized to sign contracts on behalf of the City.

¶ 19 In support of its argument that the City was required to affirmatively plead Fisher's lack of capacity, Direct Energy cites *Oh Boy Grocers v. South East Food & Liquor, Inc.*, 79 Ill. App. 3d 252, 259-60 (1979), where this court stated that an employee's alleged lack of authority to sign a check on his company's behalf was an affirmative defense that must be plead and proven. However, *Oh Boy* is inapposite because the issue there was not whether a contract was formed between the parties, but whether the defendant company was required to reimburse the plaintiff where the defendant's employee wrote a bad check for the delivery of certain goods. See *id.* at 253-55.

¶ 20 In short, the City's position is not in the nature of an affirmative defense but rather that Direct Energy did not produce facts establishing that a contract was formed. As the plaintiff

and moving party, Direct Energy was required to show that a valid and enforceable contract was formed between the parties, *i.e.*, that the City accepted its offer to provide electricity.

¶ 21 We find that Direct Energy did not meet its burden. Direct Energy did not present any evidence demonstrating that the city council, as the municipal corporate authority, was aware of, much less agreed to, any contract with Direct Energy. Although Direct Energy's evidence showed that Fisher signed an agreement and Williams was aware of Direct Energy's invoices, all of the testimony in the record was that neither of these individuals had the authority to bind the City to a contract. "Only the corporate authorities have the power to bind the city in a contract unless that power is expressly delegated to another." *Chicago Food Management, Inc. v. City of Chicago*, 163 Ill. App. 3d 638, 643 (1987). Moreover, the law presumes that those who deal with a municipal corporation know the limitations on the power of city officials to enter into contracts, and prospective contractors proceed at their own risk. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 36; *McMahon v. City of Chicago*, 339 Ill. App. 3d 41, 46 (2003). Thus, the general rule is that "when an employee of a municipal corporation purports to bind the corporation by contract without prior approval, in violation of an applicable statute, such a contract is utterly void." *City of Belleville v. Illinois Fraternal Order of Police Labor Council*, 312 Ill. App. 3d 561, 563 (2000).

¶ 22 In this case, Direct Energy presented no evidence that the city council approved the written agreement signed by Fisher, and Direct Energy has therefore failed to show the existence of an enforceable contract. Although Direct Energy argues that Williams "ratified" the agreement, this argument is unavailing because Williams did not have the authority to do so. Direct Energy relies on section 2-16-030 of the Harvey Municipal Code, which provides that "[t]he comptroller shall have charge of all contracts, judgment orders, notes, bonds and evidences of indebtedness belonging to the city" and "shall have authority to execute in the name of the city all necessary releases of claims, settlement of which has been legally authorized." Harvey Municipal Code § 2-16-030(B) (eff. 2016). However, nothing in this provision gives the comptroller the power to form a contract without the city council's approval. It is one thing to have "charge" of the City's rights and obligations under existing contracts but another to sign those contracts in the first place. In any event, it remains true that, in the municipal law context, a contract not approved by the corporate authority is void, rather than merely voidable, and cannot be ratified by subsequent municipal action. *McMahon*, 339 Ill. App. 3d at 48; *D.C. Consulting Engineers, Inc. v. Batavia Park District*, 143 Ill. App. 3d 60, 63 (1986). Accordingly, Direct Energy is not entitled to summary judgment on its breach of contract claim.

¶ 23 Alternatively, Direct Energy argues that this court may also award it summary judgment on its *quantum meruit* claim pursuant to our authority under Illinois Supreme Court Rule 366 (eff. Feb. 1, 1994). *Quantum meruit*, meaning "as much as he deserves," is a cause of action seeking recovery for the reasonable value of services that were rendered nongratuitously in the absence of a contract dictating payment. (Internal quotation marks omitted.) *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 61. The elements of a *quantum meruit* claim are that (1) the plaintiff performed a service of measurable benefit to the defendant, (2) the service was not performed gratuitously, (3) the defendant accepted the benefit of the service, and (4) there was no written contract prescribing payment for the service. *Id.*

¶ 24 In the municipal context, Illinois courts have traditionally drawn a distinction between cases in which the municipal corporation was utterly without power to make the contract in

question and cases in which the corporation had the power but exercised it in an irregular way. *D.C. Consulting*, 143 Ill. App. 3d at 63. In the former scenario, the contract is void, and the municipality cannot be held liable. *Id.* In the latter scenario, however, the contract is merely voidable, and the plaintiff may recover in *quantum meruit. Id.* Recently, in *Restore Construction Co. v. Board of Education of Proviso Township High Schools District 209*, 2020 IL 125133, ¶ 38, our supreme court discussed when a governmental unit may be held liable in *quantum meruit* where statutory procedures for awarding contracts were not strictly followed. There, the defendant school board argued that the plaintiff construction company could not recover in *quantum meruit* for services rendered because the board's contract with the plaintiff did not comply with certain competitive bidding and formal voting procedures. *Id.* ¶¶ 34-36. The court held that the plaintiff could recover in *quantum meruit*, reasoning that (1) hiring contractors was "unquestionably among the types of action Illinois school boards are authorized to undertake" and (2) the school board could not invoke its own failure to comply with legal requirements to avoid paying for services that were performed in good faith and accepted by the board. *Id.* ¶¶ 37-41.

¶ 25    This is in stark contrast to the present case, where the invalidity of the contract was not due to any action or misconduct by the city council. Here, the city council evidently had no involvement in procuring electricity from Direct Energy whatsoever. Whereas the school board in *Restore Construction* was "regularly updated on the progress of the project and willingly accepted the fruits of [the plaintiff's] efforts," there is no indication in the record that the city council was aware that the City switched electricity providers on Fisher's approval. *Id.* ¶ 39. While the council was undoubtedly aware that *somebody* was providing municipal facilities with electricity, it would have had no reason to know that its previous contract with ComEd, which was apparently approved by the council, had been disturbed. Indeed, the *Restore Construction* court expressly noted that that case was not like *Patrick Engineering*, which presented a situation involving the authority of a municipal employee to bind a municipality to a contract. *Id.* ¶ 33. However, the present case is like *Patrick Engineering* in that it involves the actions of an authorized municipal employee rather than the corporate authority itself. In such cases, any contract entered into by the employee is void, and the plaintiff may not recover in *quantum meruit*. See *Patrick Engineering*, 2012 IL 113148, ¶¶ 38-39; *D.C. Consulting*, 143 Ill. App. 3d at 63-64. Direct Energy was therefore not entitled to summary judgment on its *quantum meruit* claim.

¶ 26                                III. CONCLUSION
¶ 27    In sum, Direct Energy was not entitled to summary judgment on its breach of contract claim because it did not present evidence that it formed a valid and enforceable contract to provide the City with electricity. Direct Energy is also not entitled to summary judgment on its claim of *quantum meruit* because, as its agreement was signed only by a municipal employee without authority to bind the City, the contract was void rather than merely voidable. Accordingly, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 28    Reversed and remanded.