2021 IL App (1st) 201101-U

FIFTH DIVISION
NOVEMBER 12, 2021

No. 1-20-1101

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| NIRO LAW GROUP, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 L 10339 |
| | ) | |
| PROFOOT, INC., | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendant-Appellee. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Hoffman concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's order granting summary judgment in favor of the defendant is affirmed.

¶ 2    The plaintiff-appellant, Niro Law Group, LLC (NLG), brought a *quantum meruit* action against the defendant-appellee, ProFoot, Inc., (ProFoot), in the circuit court of Cook County. The complaint sought payment for legal services provided by NLG to ProFoot in another lawsuit. The circuit court granted summary judgment in favor of ProFoot and NLG now appeals. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                                 BACKGROUND

¶ 4      ProFoot is an entity organized under the laws of the state of New York, which designs foot care products. Around October 2013, ProFoot acquired the rights to the patent for a foot care product. At the time that ProFoot acquired the rights to the patent, there was already ongoing, various litigation surrounding the patent, including an action in the United States District Court for the Northern District of Illinois (the Illinois case). In January 2014, ProFoot retained the law firm of Niro Haller & Niro (NHN) to represent it in the Illinois case. That case was a patent infringement claim against Merck & Co., the predecessor of Bayer AG. ProFoot and NHN executed a retainer contract, which was a contingency fee agreement that provided NHN's compensation would be 35% of all gross recoveries paid from litigation, negotiations, and settlements involving the patent at issue.

¶ 5      On June 17, 2015, the federal court in the Illinois case entered an order against ProFoot in its patent infringement claim. ProFoot and Bayer entered into a stipulation to dismiss, covenant not to sue, and release of ProFoot's claims under the patent, subject to ProFoot's right to appeal. On October 23, 2015, NHN filed a notice of appeal on behalf of ProFoot.

¶ 6      In December 2015, before the appeal in the Illinois case was briefed, William Niro, the attorney who had been representing ProFoot at NHN, left NHN. William formed a new law firm, NLG, with his son, Christopher.[1] In a letter dated December 10, 2015, William informed ProFoot about his move from NHN to NLG. The letter advised ProFoot that it could choose to continue to have William represent it at NLG, or it could have other lawyers at NHN represent it, or it could

_____

[1]Since William and Christopher share the same last name, this order will refer to them by their first names.

choose an entirely new lawyer. The letter instructed ProFoot to check a box in the letter indicating its choice. ProFoot checked the option indicating that it wished to be represented by William and Christopher at the new law firm, NLG. The checked box stated:

> "I wish to be represented by William Niro and Christopher Niro, Niro Law Group, LLC. Please transfer all of our records, files and property including trust fund money and retainers, if any, to [NLG] at the address noted above."

¶ 7    NLG then represented ProFoot in its appeal in the Illinois case. The appeal was unsuccessful. Consequently, ProFoot's release of claims and covenant not to sue became effective, foreclosing any possible recovery for ProFoot on its patent infringement claim. NLG did not bill ProFoot for its time spent on the appeal.

¶ 8    In January 2017, Bayer filed a petition in the federal court for the Northern District of Illinois to recover $1.5 million in attorney fees and costs for defending the patent claims in the Illinois case. NLG defended ProFoot against Bayer's petition. NLG again did not bill ProFoot for its time spent defending it against the petition.

¶ 9    In June 2017, while Bayer's petition was still pending, ProFoot and Bayer entered into a global settlement agreement, which resolved Bayer's fee petition. The global settlement agreement also resolved a separate trademark/antitrust case pending between ProFoot and Bayer in the United States District Court for the District of New Jersey (the New Jersey case). NLG did not represent ProFoot in the New Jersey case.

¶ 10    In August 2017, NLG issued a "notice of attorney's lien" to ProFoot, Bayer, and Bayer's counsel. The notice stated:

> "[ProFoot] entered into a contract with [NLG] to pay as compensation for services rendered and to be rendered in and about the prosecution of the said suits,

claim, or causes of action, a sum equal to thirty-five percent (35%) of any amount that may be recovered by way of suit or settlement or otherwise."

¶ 11    On September 14, 2017, ProFoot filed a complaint against NLG, William, and Christopher in the United States District Court for the Eastern District of New York (the EDNY case). ProFoot's complaint sought, *inter alia*, a declaratory judgment that NLG is "entitled to no fees in connection with ProFoot's [global] settlement with Bayer, or otherwise in connection with the New Jersey or Illinois [cases]." In its complaint, ProFoot explained how it had terminated its agreement with NHN and then retained NLG and stated that "[NLG] is not a successor in interest to NHN and has no rights to assert claims, or a demand for arbitration, under the NHN agreement ***." The complaint alleged that ProFoot believed that NLG was working pursuant to a contingency fee agreement, but that NLG did not provide ProFoot with a written agreement explaining ProFoot's rights under that representation. Additionally, ProFoot stated in its complaint that NLG "had no role" in the New Jersey case.

¶ 12    NLG moved to dismiss ProFoot's complaint in the EDNY case. NLG attached to its motion an affidavit from William in which he attested, "In December 2015, when I resigned from NHN and began practicing at [NLG], Pro[F]oot authorized us to continue with the representation under the Engagement Agreement" that ProFoot had previously executed with NHN. The EDNY case was later dismissed due to lack of jurisdiction.

¶ 13    However, on September 24, 2018, NLG filed a complaint against ProFoot in the circuit court of Cook County. NLG's complaint contained a single count, based on *quantum meruit*. The complaint alleged that, upon ProFoot's request, "NLG expended over 185 hours of attorney time and efforts to benefit and advance the interests of ProFoot" in the appeal in the Illinois case and in defending Bayer's petition for attorney fees. NLG alleged that "no contract existed to prescribe

payment of NLG's services." NLG accordingly asked the trial court to enter a judgment in its favor on its *quantum meruit* claim and to award damages "in an amount to be determined at trial."

¶ 14    ProFoot answered NLG's complaint and also filed counterclaims against NLG. The counterclaims alleged: (1) breach of fiduciary duty, (2) breach of contract, and (3) violation of the Illinois Deceptive Trade Practices Act. All of ProFoot's counterclaims were subsequently dismissed.

¶ 15    On February 10, 2020, ProFoot filed a motion for summary judgment, which is the subject of this appeal. The motion for summary judgment argued that NLG could not meet its burden to establish the elements of a cause of action for *quantum meruit* because it was undisputed "that a contract existed governing payment for the relationship between ProFoot and NLG." Specifically, ProFoot claimed that pursuant to the December 10, 2015, letter, it entered into a retainer agreement with NLG that was the same retainer agreement it had entered into with NHN, which was a contingency fee agreement. In support of its argument, ProFoot pointed out that, in the EDNY case, William's affidavit had stated, "In December 2015, when I resigned from NHN and began practicing at [NLG], Pro[F]oot authorized us to continue with the representation under the Engagement Agreement" that ProFoot had previously executed with NHN.

¶ 16    NLG filed a response to ProFoot's motion for summary judgment. Its response argued:

> "The fact is that there is no written contract between NLG and ProFoot. It is true that at one point, NLG took the position that it represented ProFoot pursuant to the NHN-ProFoot agreement. But NLG abandoned this position after ProFoot categorically rejected that NLG had any right or interest under the NHN-ProFoot agreement."

NLG's response made much of the fact that, in the EDNY case, ProFoot asserted that NLG had no

rights under the NHN agreement.

¶ 17    On June 12, 2020, following arguments on ProFoot's motion, the trial court entered summary judgment in favor of ProFoot. The trial court's order stated:

"The court finds no genuine issue of material fact that the NLG-ProFoot relationship was governed by contract, specifically, that the parties agreed to continue the representation under the same terms as the NHN-ProFoot relationship. The key facts which establish this to be true are:

• The December 2015 letter from [William] to ProFoot, which ProFoot signed and returned in January 2016, agreed that NLG would 'continue to represent' ProFoot.

• NLG's billing records show that NLG never billed ProFoot for time.

• Daniel Feldman, Principal and COO of ProFoot, averred in an affidavit in support of the instant motion that 'ProFoot agreed to be represented by NLG on the same contingency fee basis as governed the relationship between NHN and ProFoot.'

• [William's] own affidavit in the EDNY Case said that after [William's] departure from NHN, 'ProFoot authorized us to continue with the representation under the [NHN] Engagement Agreement.'

These facts establish that there is no genuine issue of material fact that the parties' relationship was governed by contract."

The trial court additionally rejected NLG's argument concerning ProFoot's statement in the EDNY case about NLG not being a successor in interest to NHN. The trial court found that statement "is not at all inconsistent with NLG and ProFoot agreeing to continue their representation on the same terms as were present in the NHN Agreement."

¶ 18    On the same day that the trial court granted summary judgment in favor of ProFoot, but

prior to the trial court issuing its ruling, NLG filed, without leave from the court, a supplemental memorandum titled, "Memorandum of Law Concerning Evidentiary Admission by [ProFoot] through Pleading in Related Proceeding." The supplemental memorandum argued that the trial court should deny ProFoot's motion for summary judgment, but in a footnote, requested that "[i]f the [c]ourt does find as a matter of law that ProFoot and NLG had an enforceable contingency fee agreement, NLG should be permitted to amend its pleadings to assert a breach of contract claim based on that agreement." The supplemental memorandum asked the trial court to take judicial notice of ProFoot's complaint in the EDNY case as evidence that a contract did not exist. ProFoot objected to the supplemental memorandum, in part on the basis that it was procedurally improper since briefing on the motion for summary judgment was closed.

¶ 19     On July 13, 2020, while the supplemental memorandum was still pending, NLG filed a motion to reconsider the order granting summary judgment in favor of ProFoot. The motion to reconsider argued that the trial court misapplied the law in granting summary judgment for numerous reasons. NLG also raised several new arguments in its motion to reconsider, including that the trial court misapplied Rule 1.5(b) of the Illinois Rules of Professional Conduct.

¶ 20     On September 14, 2020, the trial court entered an order striking NLG's supplemental memorandum on the grounds that the "filing obviously came too late to be considered by the court and was in any event filed without leave of the court." The September 14, 2020, order also denied NLG's motion to reconsider. In denying the motion to reconsider, the trial court noted that most of NLG's arguments were forfeited because they had not been raised prior to the motion to reconsider. The September 14, 2020, order additionally held that any arguments that NLG had not forfeited were nonetheless rejected because the trial court did not misapply the law in its summary judgment order.

1-20-1101

¶ 21 NLG subsequently appealed the trial court's June 12, 2020, order granting summary judgment in favor of ProFoot and the trial court's September 14, 2020, order denying its motion for reconsideration and striking its supplemental memorandum.

¶ 22                                        ANALYSIS

¶ 23 We note that we have jurisdiction to consider this matter, as NLG filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 24 Although NLG presents the matter for our review as only one issue, NLG's arguments essentially amount to three different issues on appeal: (1) whether the trial court erred in granting summary judgment in favor of ProFoot; (2) whether the trial court erred in denying NLG's motion to reconsider; and (3) whether the trial court erred in striking NLG's supplemental memorandum.

¶ 25 NLG first argues that the trial court erred in granting summary judgment in favor of ProFoot. NLG claims that there is an "unresolved factual issue" of "whether there is an enforceable written retention agreement between the parties," which precluded summary judgment on its *quantum meruit* claim. Specifically, NLG argues that the December 10, 2015, letter, in which ProFoot checked the option to have NLG take over their representation, was "devoid of any terms or conditions concerning the representation." In support of its argument, NLG points to the EDNY case where ProFoot alleged that NLG was not a successor in interest to NHN and did not have any rights under the NHN agreement. NLG also makes much of ProFoot's statements in the EDNY case about there being no written agreement that explained the terms of the contingency fee between ProFoot and NLG, and argues that the trial court should have taken judicial notice of those statements. Accordingly, NLG asserts that there is a question of fact as to whether a contract existed governing payment for the relationship between ProFoot and NLG. NLG asks this court to vacate the trial court's order granting summary judgment.

¶ 26 The purpose of summary judgment is to determine if a question of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020); *Adams*, 211 Ill. 2d at 43. "Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review appeals from summary judgment rulings *de novo*. *Id.*

¶ 27 Here, the trial court granted summary judgment on NLG's *quantum meruit* claim. *Quantum meruit* means "as much as he deserves." *Kane v. Option Care Enterprises, Inc.*, 2021 IL App (1st) 200666, ¶ 40. The doctrine of *quantum meruit* is based on an implied promise to pay for services because otherwise the recipient of the services would be unjustly enriched. *Id.* To recover under a *quantum meruit* claim, the plaintiff must prove that: (1) the plaintiff performed a service to benefit the defendant; (2) the plaintiff did not perform this service gratuitously; (3) the defendant accepted this service; and (4) *no contract existed to prescribe payment for this service*. *Id.*

¶ 28 The trial court granted summary judgment in the instant matter on the basis that NLG could not prove the fourth factor of a *quantum meruit* claim, that no contract existed. We agree with the trial court's finding that no genuine, material question exists as to whether there was a contract in place governing NLG's services in representing ProFoot. The record establishes that there was a contingency fee agreement between the parties that set the terms and conditions for NLG's representation of ProFoot. When ProFoot selected to move its representation from NHN to NLG

in the December 10, 2015, letter, that selection stated that any *retainers* would be transferred to NLG. Since ProFoot had entered into a contingency fee retainer agreement with NHN, the December 10, 2015, letter memorialized that NLG would then succeed NHN in representing ProFoot under the same contingency fee arrangement. See *Covinsky v. Hannah Marine Corp.*, 388 Ill. App. 3d 478, 484 (2009) (courts interpret a contract as a whole and apply the plain and ordinary meaning to unambiguous terms). Indeed, the December 10, 2015, letter invited ProFoot to *continue* to be represented by William at NLG. There is no other way to interpret the meaning of the December 10, 2015, letter. It was clearly an agreement for NLG to represent ProFoot under the same contingency fee retainer agreement that had existed between ProFoot and NHN. However, notwithstanding, it is also worth noting that any ambiguities in a contract are resolved against the drafter of the contract, (*id.*), which in this case was NLG.

¶ 29　　The finding that a contingency fee retainer agreement was in place for NLG's representation of ProFoot is further supported by the fact that NLG never billed ProFoot for its services. Simply because NLG was unsuccessful in obtaining recovery for ProFoot under the agreement, and therefore did not earn any contingency fees, does not mean that it can now attempt to recover fees on a *quantum meruit* claim. Not to mention that when NLG issued a "notice of attorney's lien" in August 2017, it stated that "[ProFoot] *entered into a contract* with [NLG] to pay as compensation for services rendered *** a sum equal to thirty-five percent (35%) of any amount that may be recovered ***." Thus, by NLG's own admission, there was a contract between the parties.

¶ 30　　We also reject NLG's argument that an issue of material fact exists because, in the EDNY case, ProFoot made statements that NLG is not a successor in interest to NHN and does not have any rights under the NHN agreement. As the trial court noted, those statements are not at odds

with NLG agreeing to represent ProFoot on the same terms as the NHN agreement. ProFoot stating that NLG does not have any rights under the *NHN agreement* is irrelevant because there was a *new agreement* between NLG and ProFoot, albeit that, the terms were the same as the prior agreement with NHN. Clearly, some of the statements made in the EDNY case by NLG, support the finding of a contract between it and ProFoot. For example, William submitted an affidavit stating: "In December 2015, when I resigned from NHN and began practicing at [NLG], *Pro[F]oot authorized us to continue with the representation under the Engagement Agreement*" that ProFoot had previously executed with NHN.

¶ 31    NLG also argues that the trial court should have taken judicial notice of another statement made by ProFoot in the EDNY case. In particular, NLG points to ProFoot's statement in the EDNY case which stated that NLG did not provide ProFoot with a written engagement agreement that explained how NLG's contingency fees would work. Notwithstanding whether the trial court should have taken judicial notice of that statement, the statement does not go against the finding that no material question of fact exists concerning whether there was a retainer agreement between NLG and ProFoot. Rather, this statement by ProFoot supports finding that there was an agreement in place which provided that ProFoot would pay NLG in contingency fees, but that the terms of the contingency fees were not detailed. Since a *quantum meruit* claim requires that *no contract exist*s, the terms of the contract are irrelevant; all that matters is that there is a contract concerning the relevant subject matter. See *Archon Construction Co., Inc. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409, ¶ 33 ("if an express contract exists between the parties concerning the same subject matter, a party cannot assert a claim on a contract implied in law"). And ProFoot's statement in the EDNY case that NLG did not provide a written agreement to explain how the contingency fees would work does not contradict that there was, nevertheless, a contract.

¶ 32    Simply put, there is no question that there was a contingency fee agreement between NLG and ProFoot governing NLG's fees for its services. Since a *quantum meruit* action requires that no contract exist, NLG consequently cannot succeed on its *quantum meruit* claim. Thus, the trial court properly granted summary judgment in favor of ProFoot and we affirm the trial court's judgment. See *Direct Energy Business, LLC v. City of Harvey*, 2021 IL App (1st) 200629, ¶ 14 (summary judgment is appropriate where the pleadings, depositions, and affidavits on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law).

¶ 33    NLG additionally argues that the trial court erred when it denied its motion to reconsider. NLG claims that the trial court "compounded its error" when it denied the motion to reconsider by finding that NLG had forfeited most of its arguments in the motion and by not realizing that it had misapplied the law in granting summary judgment.

¶ 34    The purpose of a motion to reconsider is to bring to a court's attention (1) newly discovered evidence, (2) changes in the law, or (3) errors in the court's previous application of existing law. *Jones v. Live Nation Entertainment, Inc.*, 2016 IL App (1st) 152923, ¶ 29. It is not the place to raise a new legal theory or factual argument. *Id.* We review a trial court's denial of a motion to reconsider under the abuse of discretion standard. *Id.* "A trial court's decision is considered an abuse of discretion only when it is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Id.*

¶ 35    The record establishes that most of the arguments raised by NLG in its motion to reconsider were raised for the first time in the motion, which was improper. "A motion to reconsider is not the place for the inclusion of new arguments that could have been raised earlier." *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 28. And NLG's argument that the trial court misapplied the law in its

summary judgment order is meritless considering our analysis *supra* confirming that judgment. Thus, the trial court did not abuse its discretion in denying NLG's motion to reconsider.

¶ 36    Finally, NLG argues that the trial court erred by striking its supplemental memorandum. According to NLG, because the supplemental memorandum did not raise any new arguments and contained authority relevant to the summary judgment issue, the trial court should have allowed NLG to file it. However, when NLG filed its supplemental memorandum, the briefing schedule on the motion for summary judgment was closed and the trial court had already heard arguments on the motion. NLG did not give the trial court the procedural courtesy of explaining its tardiness and seeking leave of the court before filing its supplemental memorandum. Notably, the trial court issued its ruling on the summary judgment motion on the *same day* that NLG filed its memorandum without the court's permission. So, it is clear that the trial court had already considered all the relevant arguments on the motion for summary judgment and had prepared its ruling. Under these circumstances, the trial court properly struck NLG's supplemental memorandum.

¶ 37                                    CONCLUSION

¶ 38    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 39    Affirmed.